**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerry Smith, | No. CV11-2524-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Michael J. Astrue, Commissioner of the Social Security Administration, | |
| Defendant. | |

On April 14, 2008, Plaintiff Jerry Smith applied for supplemental security income ("SSI") based on his alleged disability beginning October 7, 2007. Tr. 15. The Social Security Administration denied Plaintiff's claim on July 2, 2008, and affirmed its denial on December 17, 2008. *Id.* Plaintiff appealed, and Administrative Law Judge ("ALJ") James E. Seiler held a hearing on May 18, 2010. Tr. 213. The ALJ issued a written decision on July 28, 2010, finding that Plaintiff was not disabled as defined under Section 1614(a)(3)(A) of the Social Security Act. Tr. 15-23. This became the final agency decision when the Appeals Council denied review. Tr. 3-6. Plaintiff filed a motion for judicial review, requesting remand for an award of benefits. Doc. 17. Defendant filed a memorandum in opposition (Doc. 19), and Plaintiff filed a reply. Doc. 22. For the reasons that follow, the Court will grant Plaintiff's motion, vacate Defendant's decision, and remand for an award of benefits.[1]

---

[1] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b).

**I.     Background.**

Plaintiff was 59 years old when he applied for SSI in April 2008. Tr. 64. He has a high school education, two years of college, and last worked in 2001 as a customer service representative. Tr. 215-16. Plaintiff quit working to care for his elderly parents who suffer from various physical and mental illnesses. Tr. 231-33. Plaintiff suffers from a history of left eye retinal detachment with blindness and degenerative disc disease of the lumbar and cervical spine. Tr. 17.

Plaintiff sought treatment for his back impairments from Kenneth Levy, M.D, beginning in October 2007. *Id.* at 184-89. An x-ray of his cervical spine from October of 2007 showed "degenerative disc disease with foraminal stenosis," and the report recommended a cervical MRI for further evaluation. *Id.* at 188.[2]

On June 13, 2008, following Plaintiff's application for SSI, the Commissioner had Keith Cunningham, M.D. perform a consultative examination. Tr. 175-81. A June 13, 2008 x-ray of the lumbar spine ordered by Dr. Cunningham showed that Plaintiff had "severe spondylosis . . . at the L5-S1 level." Tr. 182. Dr. Cunningham opined that Plaintiff had normal range of motion except for the cervical spine, that he had "chronic neck and left upper extremity pain" with preserved range of motion, and a "history of left eye retinal detachment with legal blindness." Tr. 176-77. Dr. Cunningham opined that Plaintiff could occasionally lift and carry 20 pounds, had no limitations on standing, walking, or sitting, and had few postural or environmental restrictions – functional capacities consistent with the ability to perform light work. Tr. 177-80; *see* Tr. 21.[3]

On July 1, 2008, a state agency physician, Ernest Griffith, M.D., reviewed Plaintiff's medical file and completed a physical residual functional capacity assessment

---

[2] Plaintiff did not initially follow up with an MRI, purportedly because of insurance issues. *See* Tr. 175.

[3] Light work requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). A job is in this category when it requires a good deal of walking or standing or involves sitting with some pushing or pulling of hand or feet controls. *Id.*

- 2 -

which was also consistent with the ability to do light work. Tr. 167-74; *see* Tr. 22. Plaintiff's application for SSI benefits was denied on July 2, 2008.

During reconsideration of Plaintiff's denial of benefits, another state agency physician, Thomas Disney, M.D., reviewed Plaintiff's medical records and assessed his ability to work. Doc. 19 at 7; *see* Tr. 132-38. Dr. Disney noted Plaintiff's visual and back impairments and his reports of pain and limited activities and concluded that Plaintiff could do sedentary rather than light work. Tr. 133-34, 138.

Plaintiff continued receiving care from his treating physician, Dr. Levy, through April 2010. Tr. 142-44; 190-98. An MRI of the lumbar spine ordered by Dr. Levy on August 18, 2008 revealed "moderate to severe disk space narrowing and a moderate to large midline disk protrusion causing spinal stenosis and displacement of the S1 nerve roots . . . possible compression of the right S1 nerve root [and] [f]acet hypertrophy and moderate bilateral foraminal stenosis at this level." Tr. 146. An MRI of the cervical spine ordered by Dr. Levy on November 26, 2008 revealed a mild disk bulge with bilateral foraminal stenosis at the C3-C4 and C6-C7 levels, a left-sided disk protrusion with bilateral foraminal stenosis at the C4-C5 level, a disk osteophytic complex with bilateral foraminal stenosis at the C5-C6 level, and mild spondylosis form C4 though C7. Tr. 205-206.

Dr. Levy completed assessments of Plaintiff's pain levels and physical limitations in September 2008 and again in April 2010. Tr. 148-152; 126-130. As the Court will discuss in more detail below, Dr. Levy's assessments of Plaintiff's abilities – specifically his abilities to lift, carry, stand, and walk during a typical 8 hour workday – were more limited than those of the non-treating physicians. Compare Tr. 148-150 and 128-130 with Tr. 177-80, 167-74, and 132-38.

**II.    Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but

less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.     Analysis.**

Determining whether a claimant is disabled involves a sequential five-step evaluation process. The claimant must show (1) he is not currently working, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. If at any step the Commission determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to the next step. If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since applying for SSI. Tr. 17. At step two, the ALJ found that Plaintiff suffers from the following severe physical impairments:  retinal detachment and legal blindness in the left eye, and degenerative disc disease of the cervical and lumbar spine. *Id.* The ALJ found that these impairments cause more than minimal limitation in Plaintiff's ability to carry out normal work functions. *Id.* The ALJ found at step three that these impairments did not meet the criteria of any listed impairments in the Social Security Act regulations. *Id.* The ALJ found at step four that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 416.976(a), and that he is capable of performing his past relevant work as a customer service representative. *Id.* at 18, 22. The ALJ concluded that Plaintiff has not met the criteria for disability under the SSA since

applying for benefits on April 14, 2008. *Id.* at 22.[4]

Plaintiff asserts that the ALJ erred by (1) rejecting the 2008 opinion of his treating physician, Kenneth Levy, M.D., (2) purportedly relying on Dr. Levy's updated 2010 physical assessment to find Plaintiff not disabled when the evidence showed that Plaintiff's assessed limitations precluded him from all work, (3) rejecting Plaintiff's symptom testimony without providing clear and convincing reasons for doing so, and (4) failing to include Plaintiff's visual impairments in his RFC assessment. Doc. 19 at 11-28. The Court will address these arguments in turn.

**A.     Dr. Levy's 2008 Opinion.**

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). "The rationale for giving the treating physician's opinion special weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McCallister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). The ALJ may reject the opinion of a treating or examining physician by making "'findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.* Further, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR 416.976(a).

- 5 -

opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*

Plaintiff's treating physician, Dr. Kenneth Levy, prepared a "Medical Assessment of Ability to do Work Related to Physical Activities" (hereinafter "physical assessment") in September, 2008. Tr. 148-150. Dr. Levy concluded that Plaintiff could occasionally lift or carry 10 pounds, stand or walk for a total of less than 2 hours in an 8 hour workday, sit for an estimated 2 hours in an 8 hour workday, and needed to alternate between sitting and standing. *Id.* at 148. Dr. Levy indicated that Plaintiff could frequently balance, occasionally stoop, kneel, and crouch, and could never climb or crawl, and that he lacked feeling and had limited manipulation in his left hand. *Id.* at 149-50. Dr. Levy completed a "Pain Functional Capacity Questionnaire" [hereinafter "pain assessment"] in which he opined that Plaintiff suffered from moderate to moderately severe pain sufficient to interfere often with his attention and concentration and ability to complete tasks in a timely manner. *Id.* at 151-152.

Dr. Levy completed the same two assessments in April, 2010. Tr. 126-29. The only notable difference between the 2010 assessments and those completed in 2008 is that Dr. Levy opined in 2010 that Plaintiff could stand or walk for a total of less than 2 hours in an 8 hour workday and sit for less than 6 hours in an 8 hour workday, but he did not indicate how many hours less than 6 hours he thought Plaintiff could sit, as he had in 2008. Tr. 128.

The ALJ rejected Dr. Levy's 2008 opinion but stated that he gave "significant weight" to Dr. Levy's 2010 opinion. *Id.* at 21. The ALJ's reasons for rejecting Dr. Levy's 2008 opinion were that Plaintiff's documented course of treatment was not consistent with true disability, and Dr. Levy's findings were not supported by the objective findings in the record. *Id.* The ALJ concluded that Dr. Levy must have based his findings solely on Plaintiff's reports of subjective complaints and limitations, which the ALJ found to be unreliable. Tr. at 21.

The ALJ gave "significant weight" to the opinions of the Commission's examining physician, Dr. Cunningham, and the state agency's reviewing physician, Dr.

Griffiths, but found that Plaintiff was more limited than these physicians had assessed and that "when the whole of the record, including the claimant's testimony, are taken into account, the record better supports the conclusion that the claimant can perform the full range of sedentary work." Tr. 21-22.  The ALJ gave "great weight" to the opinion of reviewing physician Thomas Disney because he found Dr. Disney's conclusion that Plaintiff could perform sedentary work, rather than light work, "consistent with the medical evidence of record when considered in a light most favorable to the claimant." Tr. 22.

Plaintiff asserts that the ALJ erred because he did not rely on substantial evidence to reject Dr. Levy's 2008 opinion. Doc. 19 at 12. Plaintiff first argues that the ALJ is not a medical expert and therefore was not in a position to assess the adequacy of Plaintiff's course of treatment. *Id.* at 13. Plaintiff also argues that the ALJ improperly discounted Dr. Levy's reliance on Plaintiff's report of his symptoms, and the examining and reviewing doctors' opinions to which the ALJ gave "significant weight" and "great weight" do not constitute substantial evidence because they were not based on independent findings or supported by other evidence on the record. Doc. 19 at 16-17.

### 1. Plaintiff's Course of Treatment.

Defendants argue that it was appropriate for the ALJ to consider Plaintiff's course of treatment because the Commissioner's regulations require the ALJ to consider the record as a whole when evaluating the weight to give to a medical opinion. Doc. 22 at 11; citing 20 C.F.R. § 416.927(c)(4). The regulations state that "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4). The Court concludes that it was appropriate for the ALJ to consider whether the levels of disability and pain Dr. Levy described were consistent with the course of Plaintiff's medical treatment on record.

The cases Plaintiff cites do not change this conclusion. *See* Doc. 19 at 13. These cases stand for the proposition that an ALJ is not permitted to draw his own medical conclusions in conflict with medical source evidence. *See* Doc. 19 at 13. *See, e.g.*,

*Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (rejecting an ALJ's determination of a claimant's ability to sit through an 8 hour work-day that was contrary to a medical expert's opinion and was not based on medical evidence); *cf. Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) ("[T]he Hearing Examiner, who was not qualified as a medical expert, should not have gone outside the record . . . for the purpose of making his own exploration and assessment as to claimant's physical condition."). But the ALJ did not make his own medical findings or opine what the appropriate treatment for Plaintiff's purported pain level and physical limitations should be. The ALJ merely noted that despite allegations of disabling pain, Plaintiff continued with "conservative treatment," taking medication that consisted only of anti-inflammatories, including Tylenol and ibuprofen, and Plaintiff did not seek treatment from a specialist or take any narcotic-based pain medications. Tr. 19, 20-21. The ALJ concluded that "the course of treatment documented in the record has not been consistent with what one would expect if the claimant were truly disabled, as Dr. Levy has reported." *Id.* at 21. This finding of inconsistency could reasonably support the ALJ's determination that Plaintiff's purported pain and limitations were exaggerated, but it is not enough, on its own, to constitute "substantial evidence on the record" for rejecting the opinion of Plaintiff's treating physician.

### 2. Reliance on Plaintiff's Subjective Complaints.

A finding that a treating physician's opinion is not supported by clinical evidence may be grounds for giving it less weight. *Thomas v. Barnhart*, 278 F.3d at 957. Here, however, the ALJ did not specify how the clinical evidence on the record, including the x-rays and MRIs ordered by Dr. Levy, failed to support Dr. Levy's assessment. The fact that Dr. Levy may have based his opinion largely on Plaintiff's subjective complaints is also not a reason for rejecting that opinion, particularly where the record shows that Dr. Levy ordered clinical tests and saw Plaintiff approximately once every one to three months for close to three years during the time at issue. Tr. 184-89; Tr. 142-44; Tr. 190-198. "An ALJ does not provide clear and convincing reasons for rejecting an examining

physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) ("The fact that [a treating physician] also relied on [the claimant's] subjective complaints hardly undermines his opinion as to her functional limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic tool.'") (internal citation omitted).

### 3. Other Medical Opinion Evidence.

The remaining question is whether the ALJ supported his rejection of Dr. Levy's 2008 assessments on the basis of other medical source evidence supported by independent clinical findings or other evidence on the record. Plaintiff argues that Dr. Cunningham's evaluation was fatally flawed because there is no evidence that Dr. Cunningham reviewed any background medical information as required under 20 C.F.R. § 416.917, or even addressed the x-ray that he ordered as part of the consultative exam when he rendered his opinion. Doc. 19 at 16. Plaintiff also argues that the opinions of the nonexamining state physicians do not constitute substantial evidence because they rely, in part, on Dr. Cunningham's report, and they also are not supported by other independent evidence. *Id.* at 17.

Contrary to Plaintiff's argument, Dr. Cunningham did make independent observations and clinical findings during his physical exam. Specifically, Dr. Cunningham noted that Plaintiff was able to walk and stand independently, could dress and undress independently, had a normal gait, normal range of motion except for the cervical spine, and his straight leg raise was negative sitting and lying. Tr. 176. The ALJ did not cite to these findings, however, as a reason for discounting Dr. Levy's conclusions or specify any clinical evidence relied upon by Dr. Cunningham or the reviewing physicians as a reason for rejecting Dr. Levy's assessments. Moreover, as Defendant concedes (Doc. 22 at 11), Dr. Cunningham did not indicate that he had reviewed background medical information, and the ALJ found, without specific

elaboration, that Dr. Cunningham's opinion was inconsistent with the record as a whole, including Plaintiff's own testimony. Tr. 21. The ALJ failed to specify why this opinion and the concurring opinion of Dr. Griffith, both of which he stated were "inconsistent with the record as a whole," were more trustworthy than that of Dr. Levy.

The ALJ ultimately credited the opinion of Dr. Disney that Plaintiff could do sedentary work as "consistent with the medical evidence" (Tr. 22), but did not elaborate on what this medical evidence was or cite to particular clinical evidence that would support Dr. Disney's assessment and contradict Dr. Levy's. The ALJ's discussion of other conflicting medical source evidence thus falls short of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence" required for rejecting the assessments of Plaintiff's treating physician. *Thomas*, 278 F.3d at 957. The Court concludes that the ALJ gave insufficient reasons on the record for rejecting Dr. Levy's 2008 assessments.

**B.     Dr. Levy's 2010 Assessments.**

Plaintiff argues that Dr. Levy's 2010 assessments, to which the ALJ stated he gave "significant weight," are sufficient to show disability because they show that Plaintiff could only stand, walk, or sit for a total of less than 8 hours in a typical workday and that Plaintiff suffered from pain that would often lead to failure to complete regular tasks in a timely manner. Doc. 19 at 19. Plaintiff argues that had the ALJ properly credited this evidence, a disability ruling would have followed. *Id.* at 19-20.

Defendant argues that Dr. Levy's assessment that Plaintiff could only stand or walk for less than 2 hours and sit for less than 6 hours of an 8 hour workday does not show that Plaintiff was precluded from all work because the ALJ reasonably interpreted Dr. Levy's assessment to mean that Plaintiff could work "just short of eight hours," and an 8 hour workday includes two fifteen minute breaks. Doc. 22 at 7-8. Defendant also argues that the ALJ must have rejected Dr. Levy's 2010 pain assessment because he rejected Dr. Levy's 2008 opinion that included the same assessment, and, since Dr. Levy's opinions were otherwise essentially the same, the only logical way to read the

ALJ's decision is that he gave little weight to both pain assessments. *Id.* at 9.

As indicated above, the only material difference between Dr. Levy's 2008 and 2010 assessments is that Dr. Levy checked that Plaintiff would be able to sit for less than 6 hours in an 8 hour workday in both cases, but specified the number of hours less than six only in the 2008 assessment. The ALJ did not state that the less than 8 hour combined total in the 2010 assessment was "just short of eight hours" and would therefor allow Plaintiff to work full 8 hour days with breaks, as Defendant argues he must have concluded. But even if this is what the ALJ meant when he accorded Dr. Levy's 2010 opinion significant weight because "certain aspects of the doctor's opinion are . . . consistent with the residual functional capacity [for sedentary work] determined in this decision" (Tr. 21.), Defendant cites no authority showing that a total assessment of less than 8 hours leads reasonably to this conclusion. Additionally, the ALJ gave no separate analysis to Dr. Levy's pain assessments from which to conclude that he rejected this part of Dr. Levy's 2010 opinion. As with the 2008 opinion, the 2010 opinion included Dr. Levy's assessment that Plaintiff suffered from moderate and moderately severe pain which often interfered with his attention and concentration. Tr. 126-27.

The vocational expert testified that Plaintiff would be precluded from all work based on Dr. Levy's 2008 physical capacity and pain level assessments, both because "the work wouldn't total eight hours a day" (Tr. 235) and because the moderately severe level of pain that Dr. Levy indicated "would be in excess of what would be acceptable for [Plaintiff] to concentrate on a job, or complete tasks, or follow instructions" (Tr. 236). This testimony applies equally to the 2010 assessment. Thus, Dr. Levy's 2008 opinion, which the ALJ rejected, and his 2010 opinion, which the ALJ claimed to accept, both compel the conclusion that Plaintiff could not perform past or other relevant work.[5]

---

[5] Defendant argues that the vocational expert's testimony was not based on Dr. Levy's actual assessment because the vocational expert testified that Dr. Levy opined that Plaintiff's pain level was moderately severe when, in fact, Dr. Levy opined that the pain level was moderate to moderately severe. Doc. 22 at 11-12. This distinction is immaterial because Dr. Levy checked moderate and moderately severe on both the 2008 and 2010 pain assessments, and in both assessments Dr. Levy opined that Plaintiff often experienced pain sufficiently severe to interfere with attention and concentration and to

- 11 -

Because the Court has found that the ALJ erred in rejecting Dr. Levy's 2008 assessments, and these assessments and the 2010 assessments to which the ALJ claimed to give significant weight both compel the conclusion based on the vocational expert's testimony that Plaintiff would not be able to do any full time work, the Court need not address Plaintiff's remaining reasons for challenging the ALJ's negative disability determination. In the interest of thoroughness, the Court will nonetheless address whether the ALJ properly discounted Plaintiff's symptom testimony that the ALJ said Dr. Levy must have relied on. *See* Tr. 21.

### C.    Plaintiff's Symptom Testimony.

Plaintiff testified that his left eye impairments limit his ability to read to 45 minutes at a time; he experiences sharp pain that comes and goes in his neck, shoulders, and upper back, shooting pain down his left arm, and constant numbness in his left hand and fingers. Tr. 220-224. Plaintiff testified that the pain in his neck, shoulders, and arm are made worse by sitting too much, and he experiences a dull pain in his lower back that is made worse by standing. Tr. 227-28. He testified that he treats his pain with ibuprofen four times a day, that he used to take Flexeril, but stopped because it made him feel tired and weaker than usual, and that he lies down to relieve pain for an hour to an hour and a half approximately twice per day. Tr. 226-28.

The ALJ evaluated Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ determined that Plaintiff's medically determined impairments could reasonably produce the alleged symptoms. Tr. 20. Given this conclusion, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Plaintiff not entirely credible. *Smolen*, 80 F.3d at 1281.[6] Plaintiff argues that the

---

result in failure to complete tasks in a timely manner. Tr. 126-27; 151-52.

[6] Defendant argues that the clear and convincing standard does not apply on the basis of the Ninth Circuit's en banc decision in *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991), in which the Court of Appeals stated that to discredit a claimant's

ALJ failed to meet this burden. Doc. 13 at 18. The Court agrees.

The ALJ discounted Plaintiff's testimony because he found that Plaintiff's description of daily activities was not limited to the extent one would reasonably expect from the alleged symptoms; Plaintiff has only received routine, conservative care and not sought out a specialist or taken narcotic-based pain medications; Plaintiff's reported reading limitations are not consistent with the fact that he reported spending his days reading and watching television, his doctors said his vision was unchanged and stable, and he did not tell his doctors that his visual impairments caused him difficulty reading or performing daily activities. Tr. 20-21. The ALJ also noted that Plaintiff stopped working for reasons unrelated to disability and continues to care for his parents with help from his sister. Tr. 20.

As previously discussed, the fact that Plaintiff did not seek help from a specialist or more aggressive pain treatments and instead relied on ibuprofen and lying down to relieve his pain provides some support for doubting Plaintiff's descriptions of the persistence and severity of his pain. The Ninth Circuit has recognized evidence of "conservative treatment" as a reason to discount a plaintiff's testimony about the severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). In *Parra*, however, the court also found inconsistencies between the plaintiff's claims of bursitis-related knee pain and laboratory tests showing normal function (481 F.3d at 751), and in *Johnson* the court found that the

---

subjective complaints the ALJ must make findings "properly supported by the record" that are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." Doc. 22 at 12. Defendant argues that subsequent cases that have articulated a "clear and convincing" standard are not binding because only an en banc panel can overrule *Bunnell*. *Id.* at 13. The Court finds this argument unpersuasive. Subsequent cases have explained that an ALJ "may only find an applicant not credible by making specific findings as to credibility *and* stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis added); *see also Lingenfelter*, 504 F.3d at 1036. Thus, the cases applying the "clear and convincing" standard in no way contradict or overturn *Bunnell*. Furthermore, numerous cases have applied the "clear and convincing" standard, and this Court is in no position to disregard them. *See, e.g.*, *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504 F.3d at 1036; *Orn*, 495 F.3d at 635; *Robbins*, 466 F.3d at 883; *Smolen*, 80 F.3d at 1281; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

plaintiff did not seek any medical treatment for alleged back pain for a number of years of claimed disability, and that medical evidence, including "conservative treatment" when the plaintiff did seek relief, suggested a lower level of pain and functional limitation than claimed. 60 F.3d at 1434. Such additional factors as contrary medical evidence and failure to seek any treatment during a substantial period of claimed disability are not present here.

Plaintiff's professed daily activities are also not clearly inconsistent with his alleged symptoms. Plaintiff described such limited activities as light housekeeping, making microwave meals or soups for himself, washing four or five dishes at a time, going to the grocery store for a half an hour at a time, and visiting his parents two or three times a week. Tr. 19-20. Plaintiff's descriptions of caring for his parents are similarly limited to such things as stopping by to check on them, preparing a meal for them about once a week, and "mainly just keeping a watch dog on them." *Id.*

The ALJ implies that Plaintiff's descriptions of his daily activities are unreliable because they conflict with the report he included with his disability application in which he reported that his girlfriend and sister do his housecleaning. Tr. 230; *see* Tr. 81. But the fact that Plaintiff did not mention such help at the hearing does not mean he gave conflicting testimony. Plaintiff also stated in the prior report that he cared for his personal hygiene, meals, and dishwashing – the same limited range of activities he testified to at the hearing. Tr. 81. The ALJ does not cite any more-strenuous activities that Plaintiff testified to or was observed doing that conflict with his prior statements, nor does he make findings that Plaintiff's professed activities would be "'transferrable to the daily demands of the workplace'" – the two recognized bases for using daily activities to discredit a plaintiff's claims of disabling symptoms. *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The fact that Plaintiff included watching television and reading as typical daily activities also does not clearly contradict his testimony that his reading is limited to 45 minutes at a time due to his detached retina and need to block double vision from his left

- 14 -

eye. Tr. 81; 219-22. Although a treating physician indicated that Plaintiff's eye condition was "stable" and no further treatment was recommended (Tr. 20), this also does not make Plaintiff's eye condition less of an impairment; nor does the fact that Plaintiff did not expressly complain of reading limitations where he had already documented a significant loss of vision since 2003 make his testimony before the ALJ less than credible.

The fact that Plaintiff stopped working for unrelated reasons prior to claiming disability also does not make his reasons for claiming disability in 2008 invalid. *Bruten v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), which Defendant cites, is inapposite because the claimant claimed disability due to a work-related injury after which he continued to work until he was laid off, and then waited nine months before seeking medical treatment. *Id.* at 826, 828. Plaintiff, by contrast, does not claim that he stopped working due to injury or disability, but only that he became disabled several years after he chose to leave the workforce to care for his parents. Although, as Defendant notes, Plaintiff's decision not to return to work prior to claiming disability may evince a poor work history, casting some doubt on the veracity of Plaintiff's claim (Doc. 22 at 15), such doubt does not rise to the level of clear and convincing evidence for rejecting Plaintiff's symptom testimony, particularly where the ALJ made no factual findings discrediting Plaintiff's reason for leaving work, and the ALJ found that Plaintiff's symptoms could reasonably stem from his medically established impairments.

In sum, the ALJ has presented some evidence for doubting Plaintiff's testimony of the severity, persistence, and limiting effects of his symptoms, including his conservative treatment and his non-medical reasons for not seeking work, but the ALJ has not shown that Plaintiff engaged in daily activities that are either inconsistent with his description of his symptoms or that provide evidence of his ability to do work that translates to the typical work environment. The ALJ has also not pointed to any objective medical evidence that contradicts Plaintiff's account of his symptoms. On the whole, the ALJ's reasons are not sufficiently clear and convincing for rejecting Plaintiff's subjective

symptom testimony. Thus, the ALJ erred in rejecting this testimony.

The vocational expert testified that the symptoms described by Plaintiff would preclude Plaintiff from his past relevant work. Tr. 236. The ALJ did not ask whether those symptoms, apart from Dr. Levy's assessments, would preclude Plaintiff from all relevant work.

**IV.     Remedy.**

The Court has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). In *Smolen v. Chater*, the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. 80 F.3d 1273, 1292 (9th Cir. 1996); *see Varney v. Sec. of Health & Human Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (same); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("In a recent case where the ALJ failed to provide clear and convincing reasons for discounting the opinion of claimant's treating physician, we accepted the physician's uncontradicted testimony as true and awarded benefits.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988)); *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989) (extending *Varney II*'s "credit as true" rule to a case with outstanding issues where the claimant already had experienced a long delay and a treating doctor supported the claimant's testimony).

The Court has found that the ALJ failed to provide legally sufficient reasons for rejecting the 2008 assessment of Plaintiff's treating physician, Dr. Levy, and for rejecting Plaintiff's subjective testimony. There are no outstanding issues to be resolved before a disability determination may be made because the vocational expert's testimony in response to queries related to Dr. Levy's 2008 assessment, which also applies to the 2010

updated assessment to which the ALJ gave great weight, shows that the ALJ would be required to find Plaintiff incapable of past or other full time work and thus disabled if Dr. Levy's opinion were credited as true. Because these findings are sufficient to support a remand for an award of benefits, the Commission need not resolve whether its vocational expert would have found Plaintiff precluded from all relevant work based solely on his subjective complaints.

Defendant argues that it would be contrary to the Social Security Act to remand for an award of benefits unless it has first been determined that a claimant is disabled. Doc. 22 at 18. Defendant cites *Strauss v. Comm'r of the Soc. Sec. Admin*, 635 F.3d 1135 (9th Cir. 2011), as stating that even if the ALJ erred, the "errors are relevant only as they affect [the disability] analysis on the merits. A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* at 1138 (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357(7th Cir. 2005)). But *Strauss* does not apply here because *Struass* did not involve procedural error with respect to the ALJ's disability determination on the merits. Rather, it involved the ALJ's failure to develop the record as required by a prior court order. *Strauss*, 635 F.3d at 1137. Thus, the district court in *Strauss* did not undertake to determine whether claimant was entitled to benefits under the statute, nor did it credit as true evidence that the ALJ had improperly excluded. *Id.* at 1128. Instead, the court remanded for an award of benefits based solely on the ALJ's failure to follow the court's prior orders. *Id.* It was in this context that the Ninth Circuit held that the district court may not remand for a payment of benefits "without the intermediate step of analyzing whether, in fact, the claimant is disabled." *Id.*

The procedural error the Court finds here, by contrast, is precisely the error that the Ninth Circuit in *Strauss* confirmed requires remand for an award of benefits: one in which the ALJ erred in discrediting evidence and, absent any outstanding issues to be resolved, "it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (quoting *Benecke v. Barnhart*, 379 F.3d 587,

593 (9th Cir. 2004)).

Although Defendant states that the Commissioner disagrees with the credit as true rule as usurping the agency's role in determining eligibility, the overwhelming authority in this Circuit makes clear that the credit as true doctrine is mandatory.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Reddick v. Charter*, 157 F.3d 715, 729 (9th Cir. 1998); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 926 (9th Cir. 2002); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Lingenfelter v. Astrue*, 504 F.3d. 1028, 1041 (9th Cir. Oct. 4, 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits[.]") (citing *Varney*).[7]

Applying these cases, the Court concludes that the improperly rejected testimony and statements of disabling impairments by Dr. Levy should be credited as true and, when so credited, require a remand for an award of benefits.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.

2. The Clerk is directed to **remand** the case for an award of benefits.

Dated this 24th day of October, 2012.

_____
David G. Campbell
United States District Judge

---

[7] As the Court has stated on previous occasions, *see, e.g., Stevens v. Astrue*, No. CV11-1978-PHX-DGC, 2012 WL 2017947 at *9 n. 2 (D. Ariz. June 05, 2012), it too disagrees with the credit as true doctrine.  The doctrine denies ALJs an opportunity to correct errors on remand and reach decisions based on a legally accurate evaluation of the record, and instead awards benefits without further review simply because the ALJ made procedural errors.  The Court is bound, nonetheless, to follow Ninth Circuit precedent.